IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SETH BATISTE** | § | |
| | § | |
| | § | |
| **VS.** | § | **CASE NO.** 4:23-cv-02451 |
| | § | |
| **LONE STAR COLLEGE SYSTEM** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff SETH BATISTE (hereinafter "Dr. Batiste"), files this Original Complaint against Defendant, LONE STAR COLLEGE SYSTEM (hereinafter "Lone Star" or "the college"), and in support shows as follows:

## PARTIES

1. Plaintiff SETH BATISTE is a male citizen of Texas and the United States who resides in Harris County, Texas. At all times relevant to this action, Dr. Batiste was an employee of Defendant Lone Star College System.

2. Defendant, LONE STAR COLLEGE SYSTEM is a community college system organized and existing pursuant to the laws of the State of Texas for the purpose of operating a system of community colleges in and around Montgomery and Harris County, Texas. Defendant is located within the boundaries of the Southern District of Texas, Houston Division, and was Plaintiff's employer at all times relevant to this action. Lone Star may be served with citation and service of process through its Chancellor, Dr. Stephen Head, at 5000 Research Forest Drive, The Woodlands, Texas 77381.

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Dr. Batiste's action arises under federal statutes. Specifically, Dr. Batiste brings causes of action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*.

4. Venue is proper in the Southern District of Texas – Houston Division as this is the judicial district where Lone Star's principal place of business exists and all facts giving rise to Dr. Batiste's claims occurred within the Southern District of Texas - Houston Division.

5. The Court has jurisdiction over all claims in this action. The amount in controversy is within the jurisdictional limits of this Court.

## ADMINISTRATIVE PROCEDURES

6. Dr. Batiste has completed all conditions precedent to filing this suit. Within 300 days of the acts of which he complains, Dr. Batiste filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Lone Star discriminated against him based on his disability and retaliated against him based on protected activity in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq*. Dr. Batiste received a Notice of Right to Sue from the EEOC and filed this suit within 90 days of the receipt of the Notice of Right to Sue.

## FACTS

7. Dr. Batiste worked for the College from August 2009 to August 2021. Dr. Batiste dutifully served the college for 12 years and his history with the college spans 15 years (3 years initially as adjunct faculty). He started his career at the college as a faculty member and remained a professor for most of his time at the college. Dr. Batiste eventually worked his way from faculty to administrative positions at the college.

8. During his employment Dr. Batiste taught courses in developmental writing and ESOL (English to students of other languages). Dr. Batiste loved his work. He was diligent in

2

working towards the College's mission to provide comprehensive educational opportunities and programs to enrich lives. His commitment was evident throughout the 15 years he loyally worked for the College.

9. College administrators and Dr. Batiste's peers acknowledged and honored Dr. Batiste's hard work and contributions. Some of his achievements included but were not limited to the following:

- In February 2019 Dr. Batiste was honored and received an award for 10 years of dedicated service to the College.
- He was appointed Executive Director of Accreditation, leading the College's charge in writing/revising applications for Lone Star College's first set of baccalaureate degrees: RN to BSN, Business Trades, and Cybersecurity.
- Dr. Batiste led the Gaps Analysis process, which was the beginning component of the College's reaccreditation process. The college was subsequently reaccredited.
- Dr. Batiste led the accreditation process for College 7, LSC- Houston North, with specific duties leading the SACSCOC taskforce.
- He made documented recommendations to improve accreditation and compliance processes, receiving written appreciation from departments that benefitted.
- For the first 13 of his 15-year history at the college, he had no issues with management.

10. On March 1, 2020, Dr. Batiste was appointed as Chief Strategist at the college. Dr. Batiste's position was an executive-level position in which he reported directly to LSC- North

Harris President Archie Blanson. Dr. Batiste was also a member of Blanson's cabinet. A cabinet, in the higher education context, is a group of the highest-level executives at the campus (or system) that reported directly to the President (or Chancellor).

11. In 2020 Dr. Batiste requested FMLA leave, and the college approved his FMLA leave from July 27, 2020, to September 8, 2020. On July 27, 2020, Dr. Batiste was seen by his physician. His doctor noticed that his blood pressure was elevated and that he was suffering from anxiety issues. Dr. Batiste stated that he believed his blood pressure may have been caused by stressful conditions at work. His physician also noted these issues and suggested that Dr. Batiste work from home, or alternatively take some time off.

12. On October 18, 2020, Dr. Batiste submitted an ADA request for accommodation with the college. Dr. Batiste requested reasonable work-from-home accommodation with reasonable work hours and times. In his request for accommodation, Dr. Batiste stated: "Anxiety can produce significant stress, especially during the pandemic where I have had to be quarantined multiple times. My condition is not as limiting in the right working conditions and schedule. Most job functions of a strategist can be reasonably carried out in a work-from-home setting."

13. Soon after requesting the accommodation Dr. Batiste noticed a shift in how his supervisor Archie Blanson was treating him. Specifically, he noticed Blanson would not give him any work assignments. Blanson shifted Batiste's responsibilities and job duties to another staff member without communicating with Dr. Batiste. This further increased his anxiety, because he was not being given any work responsibilities. Additionally, Blanson completely stopped communications with Dr. Batiste. Dr. Batiste reported directly to Blanson, so having no communication with Blanson increased his anxiety about his job and left him feeling alienated.

14. After submission of the request, the Director of Accessibility Services and Resources, Alicia Guevara, emailed Dr. Batiste requesting verification forms for his healthcare provider to complete. Dr. Batiste emailed the forms from his physician. Dr. Batiste's physician identified his impairment as anxiety. Dr. Batiste's physician indicated that the disability limited Batiste's ability to think, work, and concentrate. His physician also stated: "The patient has expressed the ability to complete his work at home because most of his tasks can be done virtually or remotely. This would help the patient's symptoms of anxiety."

15. On November 24, 2020, Guevarra met with Batiste regarding his accommodations. Batiste stated that his anxiety was partially caused by his supervisor Blanson's management and by the coronavirus pandemic. Specifically, Blanson constantly changed Batiste's job duties and responsibilities. Batiste did not have regular working hours; he would check in at 6:30 a.m. and on certain days would be working until 10:30 p.m. Some days, Blanson would treat him as part of the cabinet, but most days he would send Dr. Batiste out of the room during the cabinet meetings. Additionally, Dr. Batiste had complications in his leg from getting infected by the coronavirus a few months prior. Dr. Batiste was 45 years old at the time and in 5 high-risk groups for coronavirus. Blanson had tasked him with implementing covid protocols. To fulfill those responsibilities, Dr. Batiste would often walk around campus from 8 a.m. to 3:30 p.m. handing out masks to anyone on campus without a mask. Dr. Batiste brought up his other conditions to Guevara. Guevarra suggested that he submit documentation of these limitations regarding his deep vein thrombosis. Dr. Batiste submitted documentation regarding his other limitations that same day. On December 1, 2020, the college denied his work-from-home accommodation. Instead offered alternate accommodations. The alternate accommodations, however, did not address the

causes of Dr. Batiste's anxiety, which he stated were: Blanson's management and the coronavirus pandemic.

16. Sometime while Batiste was on paid administrative leave, LSC began developing a Separation Incentive Program ("SIP") for which Batiste was eligible. A condition of the SIP was resignation on or before August 31, 2021. The SIP was offered to employees with 10 or more years of experience. Under the SIP agreement, the employee had to be employed as of June 3, 2021. The employee was required to resign between June 4, 2021, and August 31, 2021. Under the option that Dr. Batiste chose, the SIP would pay out 75% of Dr. Batiste's annual salary spread over 5 years. On March 23, 2021, Dr. Batiste submitted the enrollment form for the SIP. And in accordance with the SIP, submitted a future resignation date of August 31, 2021. According to the SIP documentation, "College resignation will serve as official notice to the college that you are resigning from college employment. You do not need to submit a separate resignation form to the College."

17. The College, however, decided to non-renew Dr. Batiste's employment contract. The college used the non-renewal as a way of denying Batiste his rights and benefits under the SIP. Dr. Batiste had worked loyally for the college for 15 years, and the college was denying the benefits rightfully owed to him. On May 25, 2021, the college sent Dr. Batiste a "change in contract status notice". The notice served to notify Dr. Batiste that the College would not be renewing its contract with Dr. Batiste. In the letter, the College stated: "Your departure is likely the most mutually beneficial outcome … this notice serves to extend your paid administrative leave until August 31, 2021." Therefore, by the college's admission, Dr. Batiste was still on paid administrative leave until August 31, 2021. Thus Dr. Batiste was still employed as of that date and met the eligibility requirements for the SIP. In addition, Dr. Batiste had already submitted

his future resignation date in accordance with the SIP. So, the college was now non-renewing his contract after he had already turned in a future resignation date. This in turn would serve as the college's excuse for denying Dr. Batiste the SIP benefits he was entitled to.

## **COUNT 1 – AMERICANS WITH DISABILITIES ACT DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE**

18. Dr. Batiste incorporates all allegations contained in the foregoing paragraphs.

19. Lone Star is an employer as defined by the Americans with Disabilities Act (hereinafter referred to as the "ADA"). 42 U.S.C. § 12111(5). Dr. Batiste is an employee under the ADA. 42 U.S.C. § 12111(4).

20. Dr. Batiste suffers from a disability, as defined by the ADA. Dr. Batiste has a mental impairment, anxiety disorder, along with related conditions. This impairment substantially limits one or more major life activities, including, his brain function, working, concentrating, and thinking. *See* 42 U.S.C. § 12102(1)(A) and (2)(A)(B). Lone Star had actual knowledge of Dr. Batiste's disability.

21. Dr. Batiste was qualified to perform the essential functions of his position, with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8).

22. Lone Star discriminated against and terminated Dr. Batiste because of his disability, or in the alternative because Lone Star regarded Dr. Batiste as having a disability, in violation of the ADA. *See* 42 U.S.C. § 12112; 42 U.S.C. § 12012(1)(C) and (3)(A).

23. Lone Star's actions were intentional and done with malice or with reckless indifference to Dr. Batiste's protected rights.

24. Lone Star's violations of the ADA damaged Dr. Batiste. Dr. Batiste seeks to recover all legal and equitable relief to which he is entitled because of Lone Star's unlawful actions,

7

including the recovery of backpay, benefits, reinstatement or front pay, compensatory damages, punitive damages, pre-judgment and post-judgment interest, attorney's fees and costs.

## COUNT 2 AMERICANS WITH DISABILITIES ACT RETALIATION

25. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

26. Dr. Batiste engaged in protected activity under ADA by requesting a reasonable accommodation related to his anxiety disorder. Lone Star retaliated against Dr. Batiste and took materially adverse actions against Dr. Batiste by terminating Dr. Batiste's employment and denying Dr. Batiste SIP benefits he was entitled to, because of Dr. Batiste's requests for accommodation, in violation of the ADA.  *See* 42 U.S.C. § 12112(a)-(b).

27. Lone Stars' actions were intentional and done with malice or reckless indifference to Dr. Batiste's protected rights.

28. Lone Stars' violations of the ADA damaged Dr. Batiste. Dr. Batiste seeks to recover all legal and equitable relief to which he is entitled because of Lone Star's unlawful actions, including the recovery of back pay, benefits, reinstatement or front pay, compensatory damages, punitive damages, pre-judgment and post-judgment interest, attorney's fees and costs.

## ATTORNEY'S FEES AND EXPERT FEES

29. Plaintiff seeks reasonable attorney's fees for his counsel, as well as cost of court and expert witness fees.

## JURY TRIAL

30. Plaintiff hereby demands a trial by jury.

## **PRAYER**

31.     WHEREFORE PREMISES CONSIDERED, Plaintiff SETH BATISTE respectfully prays that Defendant LONE STAR COLLEGE SYSTEM be cited to appear and answer and that upon final hearing of the cause, judgment be entered for SETH BATISTE against LONE STAR COLLEGE SYSTEM for damages in an amount within the jurisdictional limits of the Court, together with interest as allowed by law, costs of court, and any such other relief as the Court may find proper, whether in law or in equity.

Respectfully submitted,

BY:   /s/ Joel T. Joseph
           JOEL T. JOSEPH
           Federal I.D. No.: 3843114
           SBN 24106153
           P.O. Box 37
           Fresno, Texas 77545
           Phone: (713) 491-4257
           Fax: 832-626-5022
           *E-Service Email: jjoseph4law@gmail.com

**ATTORNEY FOR PLAINTIFF**

*E-SERVED DOCUMENTS ARE ONLY ACCEPTED AT THE ABOVE DESIGNATED E-SERVICE EMAIL ADDRESS.  SERVICE ON ANY OTHER EMAIL ADDRESS WILL BE CONSIDERED INVALID.